THE INIMITABLE COPPER MINING CO.; Appellant, v.
UNION COPPER MINING CO., Respondent.

## No. 2060; July 5, 1870.

**Mining Claims—Subsequent Rules of District.**—The owners of
a mining claim, having consistently with mining usages at the time
of locating, posted at each end of the claim notices: "We, the under-
signed, do claim 1950 feet in this lead or lode, it being the Reed lead,
with all dips, spurs, angles and cross-leads"—cannot be affected by
any by-laws or mining rules of the district, subsequently made, so as
to have their claim, thus published, rendered a less one.

**Mining Claims.—The Words "Lead" and "Vein"** are to be taken
as the equivalents of "lode" and "ledge."

APPEAL from Eleventh Judicial District, Calaveras
County.

Patterson, Wallace & Stow and Clarke & Carpentier for
appellant; H. & C. McAllister for respondent.

TEMPLE, J.—The plaintiff and defendant own each a
mining claim in the Copper Canyon Mining District. The
defendant's claim was first located, and is nineteen hundred
and fifty feet in length by three hundred feet in width. The
defendant's claim is along one side of this parallelogram. The
defendants, in working their lead, followed the ledge, as is
claimed, outside of their lateral boundaries, and into the
boundaries of the plaintiff's claim. The plaintiff contends
that the claims are what miners call square locations, while
the defendant contends the locations are of a lode or ledge,
and upon this question the case depends.

The plaintiff put in evidence certain by-laws or mining
rules of the district, of which the third article is as follows:
"Article 3. A miner shall be entitled to one claim by location
on a lead of one hundred and fifty (150) feet in length and
three hundred (300) feet in width: any miner discovering a
new lead or vein shall be entitled to an extra claim of the
above extent."

These rules were established on the third day of August,
1860, after the location of defendant's claim, which was made

July 31, 1860. In locating the claim defendant's grantors posted notices on each end of the claim, according to the custom of miners, in which they say "we the undersigned do claim 1950 feet on this lead or lode, it being the Reed lead, with all dips, spurs, angles and cross-leads." At the time of this location, there does not appear to have been any mining rules in force at this place, and there was nothing to prevent the locators of the defendant's claim from making a location in any manner recognized in mining usages. But we think the rule invoked not inconsistent with this location. It is true the word "lead," as applied to mines, may have a more extensive meaning than the word "lode" or "ledge," but its meaning in this particular instance must be ascertained in part from the subject matter to which it is applied. There is no evidence that any claim had been taken prior to that time, except the defendant's, and that was a lode known as the Reed lead, and was claimed with all the dips, spurs, and angles thereof. The rule itself uses the word "lead" as equivalent to "vein," for it provides that "any miner discovering a new 'lead or vein' shall be entitled to an extra claim." The one hundred and fifty feet in length is certainly along the lead, whatever it may mean, and evidently was intended to be upon a lead, which had been discovered and ascertained; and the evidence shows that this was understood by the miners to apply to the ledge or lode, which was supposed to contain the valuable metal for which the locations were made.

The judgment and order are, therefore, affirmed.

We concur: Sprague, J.; Rhodes, C. J.

Wallace, J., being disqualified, did not participate in the decision of this cause.